### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: AVANDIA MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | : : : : | MDL No. 1871 07-md-01871 |
| | : | |
| THIS DOCUMENT APPLIES TO: | : : | |
| *Bowerman v. GSK* | : : | 12-cv-3463 |

## MEMORANDUM OPINION

**Rufe, J.**                                                                                    **April 9, 2014**

      Plaintiff is a citizen and taxpayer of Arkansas, who filed this public funds illegal exaction claim on behalf of himself and all citizen-taxpayers of the state of Arkansas, seeking reimbursement to the state for money spent, through Medicaid, to purchase or reimburse the cost of Avandia for its citizens. He alleges that the state relied upon GSK's allegedly misleading statements about Avandia, and as a result, the Medicaid program purchased or reimbursed the cost of Avandia, despite the availability of a cheaper and safer alternative. Before the Court is Defendant GlaxoSmithKline's Motion to Dismiss Plaintiff's Amended Complaint.

      GSK argues that Bowerman's claims must be dismissed on two grounds: 1) Plaintiff fails to state a claim for public funds illegal exaction, as he has not adequately alleged that Arkansas's Medicaid expenditure on Avandia was a misapplication or illegal expenditure of public funds generated from tax dollars; and 2) the claims are moot because they are asserted entirely on behalf of the State of Arkansas, the Arkansas Attorney General has already settled and released identical claims on behalf of the state, and the relief sought has already been recovered under the

terms of that settlement agreement.  As the latter issue is dispositive, the Court will not address the adequacy of Plaintiff's allegations herein.

Because the mootness issue requires the Court to examine the terms of the Settlement Agreement entered into by the Arkansas Attorney General, that issue cannot be decided on the pleadings.  The Settlement Agreement submitted as an attachment to the motion to dismiss requires the Court to convert it to a motion for summary judgment.  The Court notified the parties of its intent to convert the motion and provided them the opportunity to supplement the evidentiary record, and now, the Court hereby converts the motion to dismiss to a motion for summary judgment.[1]

According to the Settlement Agreement, the State's complaint alleged that GSK made false representations concerning Avandia's lipid profile, effect on cardiovascular biomarkers, and overall safety, to the Arkansas Medicaid program ("Covered Conduct"), and further alleged that it relied upon those claims in making formulary and authorization decisions, causing false or fraudulent claims for Avandia coverage to be submitted to the Arkansas Medicaid program.[2] The state entered into a Settlement Agreement with GSK which released GSK from "any civil or administrative monetary claims or causes of action that the State, its offices, agents, agencies, political subdivisions to the extent authorized by law, and departments have or may have for any claims submitted or caused to be submitted to the State Medicaid Program as a result of the Covered Conduct."[3]  The Settlement Agreement also discharged GSK from obligations to pay

---

[1] Fed. R. Civ. P. 12(b); *Rose v. Bartle*, 871 F.2d 331 (3d Cir. 1989).

[2] Settlement Agreement, II.L.(2)(a)-(d).

[3] Settlement Agreement at III.7.

any other Medicaid-related restitution, damages, civil fines, or penalties for the Covered Conduct.[4]

GSK argues that the Settlement Agreement renders Plaintiff's claims moot, as he is seeking the same relief, for the same Covered Conduct, as that already recovered by the state from GSK, and the state of Arkansas has released Plaintiff's claim.

In response, Plaintiff argues that state law gives its citizens standing to sue a private company that diminishes the state treasury through fraud, collusion, or other wrongdoing, and that GSK has admitted criminal liability for related conduct through a guilty plea entered in the United States District Court, District of Massachusetts.[5] Plaintiff fails to squarely address the issue before the Court: whether Plaintiff's claims are barred by the Settlement Agreement and release entered into by Arkansas's Attorney General. In fact, Plaintiff's brief acknowledges that "Defendant is paying millions of dollars to the State of Arkansas to settle the precise claims Plaintiff has brought,"[6] notes that the damages he seeks are "ultimately the property of the State of Arkansas,"[7] and fails to plainly assert that any exception to the release executed by the state applies to his redundant claims.[8] Accordingly, the Court holds that the release bars Plaintiff's claims and will dismiss Plaintiff's claims as moot.

---

[4] *Id.*

[5] The Court declines to make any factual findings or legal rulings on these issues, as a ruling on the Motion does not require resolution of these issues. In a status report filed on December 2, 2013, Plaintiff asked the Court to postpone ruling in this case pending a ruling by the Arkansas Supreme Court regarding his standing to bring this suit. The Court will not postpone ruling, as Plaintiff's standing is not presently contested in this matter, and GSK seeks dismissal on other grounds.

[6] Doc. No. 6 at 3.

[7] Doc. No. 6 at 5.

[8] To the extent that Plaintiff has attempted to argue that GSK's conduct was criminal and therefore his claims fall under an exception to the release, the Court disagrees. Plaintiff has asserted civil, not criminal, claims against GSK, and the Settlement Agreement releases GSK from Plaintiff's civil claims.

3

Citing Arkansas Code § 26-35-902 and §26-22-304, Plaintiff argues in the alternative that if the Court finds his claims have been compromised by the Settlement Agreement, his counsel has an attorney's lien against the common fund created pursuant to the Settlement Agreement which must be satisfied. The Court disagrees. First, the claims raised in this suit have not been compromised; rather, they have been rendered *moot* by the compromised claims of the Attorney General of Arkansas. No settlement, verdict, or judgment has been entered in this case, and therefore no attorney's lien attaches under §26-35-304.[9] Second, Section 26-35-902 states that a court "may, in meritorious litigation brought under Arkansas Constitution, Article 16, § 13, in which the circuit court orders any county, city, or town to refund or return to taxpayers moneys illegally exacted by the county, city, or town, apportion a reasonable part of the recovery of the class members to attorneys of record and order the return or refund of the balance to the members of the class represented."[10] Here, the Court has not evaluated the merits of the litigation. Moreover, the common fund was not created by order of this Court, or in settlement of this civil action, but rather was created pursuant to a Settlement Agreement entered into by Defendant and the Attorney General of Arkansas to resolve similar claims raised in an unrelated lawsuit. Accordingly, applying Arkansas state law, the Court finds that counsel are not entitled to an attorney's lien against the common fund created by the Settlement Agreement.

---

[9] Section 16-22-304 states that upon proper notice to the adverse party, "the attorney at law, solicitor, or counselor serving the notice upon the adversary party shall have a lien upon his or her client's cause of action, claim, or counterclaim, which attaches to any settlement, verdict, report, decision, judgment, or final order in his or her client's favor, and the proceeds thereof in whosoever's hands they may come. . . . However, the lien shall only apply to the case or causes of action specifically enumerated in the notice."

[10] Ark. Code. Ann. § 26-35-902.

4